HELVERING, Com'r of Internal Revenue, v. JONES.

No. 11731.

Circuit Court of Appeals, Eighth Circuit.

June 24, 1941.

Rehearing Denied July 23, 1941.

Harry Marselli, Sp. Asst. to Atty. Gen. (Samuel, O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and John J. Pringle, Jr., Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Chase Morsey, of St. Louis, Mo. (Edward W. Lake, of St. Louis, Mo., on the brief), for respondent.

Before GARDNER and JOHNSEN, Circuit Judges, and COLLET, District Judge.

GARDNER, Circuit Judge.

This matter is before us on petition of the Commissioner of Internal Revenue for a review of the decision of the United States Board of Tax Appeals which determined a deficiency in respondent's income tax for the year 1931 in the amount of $2.05, whereas the Commissioner had determined a deficiency in the tax for that year in the amount of $1,589.83. The facts were stipulated and are as follows:

On February 11, 1931, respondent purchased certain real estate known as No. 3760 Lindell Avenue, St. Louis, Missouri. The purchase price was $35,400. At the time of the purchase there was a deed of trust on the property in the amount of $15,000, and the balance of the purchase price, to-wit, $20,400, was paid by respondent. The deed of trust was neither executed nor assumed by the taxpayer.

The property was purchased subject to the deed of trust. During the taxable years 1931, 1932, 1933 and 1934, respondent took depreciation on said property at the rate of $500 per year. When respondent purchased said property it was rented and the income therefrom was $160 per month. Shortly thereafter property values in the neighborhood deteriorated and the tenant refused to continue the payment of $160 per month rent. Thereafter, on August 26, 1931, respondent leased said property for a period of two years to Thomas J. Kemp and Robert L. Foster. The lease ran from September 15, 1931, to September 14, 1933, and the rental was $135 per month. This rent was collected until February, 1933, and was thereafter reduced to $115 per month. This amount was collected until the end of the term of the lease in September, 1933. Upon the termination of the lease the property became vacant and respondent was never able to secure another tenant.

The note for $15,000, which was secured by a deed of trust on said property, came due on January 27, 1935. At that time business conditions had so completely changed in that particular locality that taxpayer's equity in said property was of no value. The taxes for the year 1934, amounting to $380.04, were past due and unpaid, and when the note became due on January 27, 1935, respondent determined to abandon the property and permit the holder of the deed of trust to foreclose. The foreclosure sale under the deed of trust took place on March 16, 1935, and the property was purchased for the sum and price of $10,000. Respondent did not, directly or indirectly, purchase said property. The property was not purchased by the holder of the mortgage and no redemption proceedings were instituted by respondent. By reason of the foreclosure sale, the equity of respondent was completely wiped out.

The taxpayer contended before the Board of Tax Appeals, and renews the contention here, that he was entitled to deduct the sum of $20,400, less $2,000 depreciation, as an ordinary loss, allowable in full under Section 23(e) of the Revenue Act, 1934, 26 U.S.C.A. Int.Rev.Acts, page 672, while the Commissioner contends that the loss was a capital loss, allowable only to the extent of $2,000 as limited by paragraph (d) of Section 117 of the Act, 26 U.S.C.A. Int.Rev.Acts, page 708. The

Board of Tax Appeals sustained the contention of the taxpayer and determined a deficiency of $2.05.

It is the theory of the taxpayer that he abandoned the property prior to the foreclosure of the deed of trust, and hence did not lose it through foreclosure proceedings. The decision of the Board of Tax Appeals holding that the loss was an ordinary one and not a capital loss was rendered before the decisions of the Supreme Court in Helvering v. Hammel, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. ——, 131 A.L.R. 1481, and Electro-Chemical Engraving Co. v. Commissioner, 311 U.S. 513, 61 S.Ct. 372, 85 L.Ed. ——, had been handed down. In these decisions the Supreme Court held that Section 117(d) of the Revenue Act, here involved, was applicable to a sale in foreclosure, as well as to a voluntary sale. It is, however, argued by the taxpayer that the doctrine of these two cases is not here applicable because he had abandoned the property before foreclosure, and hence, was entitled to claim an ordinary loss.

■ There is really no difference between the contentions of counsel for the respective parties so far as the law is concerned. The difference between them arises from the fact that the Commissioner insists that the loss suffered was the result of a mortgage foreclosure, while the taxpayer contends that the loss was recognized by him before the foreclosure, and that so recognizing it, he abandoned the property. If the loss was suffered by reason of the foreclosure, then it was a capital loss (Helvering v. Hammel, supra; Electro-Chemical Engraving Co. v. Commissioner, supra; Commissioner v. Peterman, 9 Cir., 118 F.2d 973), but if it was a loss sustained during the taxable year resulting from a change in business conditions, then it was an ordinary loss.

While the stipulation recites that, "When the note became due on January 27, 1935, plaintiff determined to abandon the property and permit the holder of the deed of trust to foreclose," it does not appear from the stipulation what, if anything, the taxpayer did to carry out his determination. There is nothing to indicate that he notified the mortgagee that he was abandoning the property, as was done in Commissioner v. Hoffman, 2 Cir., 117 F.2d 987, relied upon by the taxpayer, nor is there any suggestion that he turned over the possession of the property to the mortgagee, nor that he in fact vacated it.

■ The property was real estate located in Missouri, and hence we may properly look to the law of that state with reference to the question of abandonment. In Pocoke v. Peterson, 256 Mo. 501, 165 S.W. 1017, 1021, in an opinion by Chief Justice Lamm, it is said: "Abandonment, as we are dealing with it, is a composite fact, one element visible, the other sounding in intention, motive. It is a fact made up of an intention to abandon, and the external act by which the intention is carried into effect. These two elements must conjoin and operate together or, in the very nature of things, there can be no abandonment. Strother v. Barrow, 246 Mo. [241] loc.cit. 250, 151 S.W. 960 et seq.; Hickman v. Link, 116 Mo. 123, 22 S.W. 472."

■ The most that can be said in favor of the theory of abandonment is that on January 27, 1935, the taxpayer "determined to abandon the property and to permit the holder of the deed of trust to foreclose." There is nothing before us from which we might properly conclude that his intention or determination was ever carried into effect. A mere intention to abandon is ineffectual unless coupled with a voluntary relinquishment of possession and control. To abandon real property there must be a concurrence of the act of leaving the premises vacant and unoccupied with the intention of not returning. There must be some clear and unmistakable affirmative act indicating a purpose to repudiate ownership.

The stipulation affirmatively shows that the taxpayer's loss was by reason of the foreclosure, and it recites that, "By reason of the foreclosure sale, the equity of petitioner was completely wiped out." The loss of the taxpayer having occurred by reason of the foreclosure sale, the case comes within the doctrine of Helvering v. Hammel, supra. The court there said [311 U.S. 504, 61 S.Ct. 371, 85 L.Ed. ——, 131 A.L.R. 1481]: "We can find no basis in the language of the Act, its purpose or its legislative history, for saying that losses from sales of capital assets under the 1934 Act, more than its predecessors, were to be treated any differently whether they resulted from forced sales or voluntary sales." See, also: Commissioner v. Peterman, supra.

We are of the view that no abandonment is shown by the record in this case and that it affirmatively appears that the taxpayer's interest in the property was extinguished by the foreclosure sale and not by a previous abandonment of the property. The decision of the Board of Tax Appeals is therefore vacated and the cause remanded with directions to redetermine the deficiency in the amount of $1,589.83.